UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JOEL IRWING WILSON,

                        Petitioner,                  Case No. 2:18-cv-78

v.                                                 Honorable Gordon J. Quist

KATHLEEN OLSON,

                        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Joel Irwing Wilson is incarcerated with the Michigan Department of Corrections at the Central Michigan Correctional Facility (STF) in Gratiot County, Michigan.  On March 5, 2015, following a seven-day jury trial in the Bay County Circuit Court, Petitioner was convicted of racketeering, in violation of Mich. Comp. Laws § 750.159i(3); larceny by conversion of an amount of $20,000.00 or more, in violation of Mich. Comp. Laws § 750.362; two counts of fraudulent sales of securities, in violation of Mich. Comp. Laws §§ 451.2501, 451.2508; and two counts of general securities act violations, in violation of Mich. Comp. Laws § 451.2508.  On April 24, 2015, the court sentenced Petitioner to concurrent prison terms of 105 to 240 months on the racketeering conviction and 80 to 120 months for each of the other convictions.

On June 7, 2018, Petitioner, with the assistance of counsel, filed his habeas corpus petition, raising two grounds for relief, as follows:

    I.       Mr. Wilson was denied due process of law and his convictions and sentence must be reversed where he was extradited and tried in violation of the United States' international treaties with Germany.

II.       Mr. Wilson was denied due process of law and a fundamentally fair trial
based on the improper testimony of the prosecution's expert witness and the
trial court's refusal to grant a mistrial.

(Pet., ECF No. 1, PageID.5.)  Respondent has filed an answer to the petition (ECF No. 7) stating

that the grounds should be denied because they are meritless.  Upon review and applying the

standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat.

1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the

petition be denied.

## Discussion

### I.       Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's

convictions as follows:

> Defendant's convictions arise from his involvement in an elaborate real estate
> scheme involving the purchase of distressed property to be renovated and sold at a
> profit.  In 2009 defendant and his partner, Michael Kazee, started Diversified Group
> Management Partnership, LLC (Diversified) and American Realty Funds
> Corporation (American).  Diversified, in turn, created 17 limited partnerships, each
> with a limited number of investors.  Kazee left the company in May 2012.  The
> prosecution alleged that defendant structured the various entities in a manner
> designed to evade compliance with federal and state securities laws and regulations,
> and to deceive individuals into investing in unprofitable companies, thereby
> allowing defendant to use the investment funds for his family's personal gain, rather
> than for the purposes for which the funds were invested.  Over the course of this
> enterprise from 2009 to 2012, approximately 125 investors invested approximately
> $7 million.   The investors lost approximately $6.4 million.   The prosecutor
> maintained that, during this time period, defendant converted approximately
> $583,000 in Diversified assets.

(Mich. Ct. App. Op., ECF No. 6-16, PageID.1456-1457) (footnote omitted).  "The facts as recited

by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C.

§ 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

Petitioner's habeas challenges do not call into question the facts recited by the state appellate court.

The jurors listened to several days of testimony and deliberated for an entire day before returning their verdicts.  The trial court departed upwards from the sentencing guidelines because the court did not believe the guidelines adequately accounted for the number of victims or the amount of the losses caused by Petitioner's conduct.

Petitioner, with the assistance of counsel, appealed his convictions and sentences raising several issues, including the two issues he raises in his habeas petition.[1]  By unpublished opinion issued August 23, 2016, the Michigan Court of Appeals rejected all of Petitioner's challenges except one:   the court ordered a remand to permit the trial court to reconsider Petitioner's sentence because the court deemed such a remand appropriate in light of the Michigan Supreme Court's decision in *People v. Lockridge*, 870 N.W.2d 501 (Mich. 2015).  (Mich. Ct. App. Op., ECF No. 6-16, PageID.1456-1463.)

Petitioner, again with the assistance of counsel, sought leave to appeal the court of appeals' decision in the Michigan Supreme Court.  Petitioner raised several issues, including the two issues raised in his habeas petition.  The Michigan Supreme Court reversed the court of appeals' determination with regard to remand for resentencing, concluding that the case should not be remanded to the trial court, but should be remanded to the court of appeals for that court's plenary review of Petitioner's claim that his sentence was disproportionate.  (Mich. Order, ECF No. 6-20, PageID.l904.)  The supreme court denied leave to appeal in all other respects.  (*Id.*)

On March 13, 2018, on remand, the Michigan Court of Appeals concluded the sentence imposed by the trial court was proportionate to the circumstances of the offense and the offender.  (Mich. Ct. App. Op. on Rem., ECF No. 6-16, PageID.1453-1455.)  Petitioner did not

---

[1] While Petitioner's appeal was pending, he was tried in the Saginaw County Circuit Court for securities violations that victimized Saginaw County residents in same scheme that was at issue in the Bay County case.  Petitioner challenges his convictions in the Saginaw County case by a separate habeas petition in *Wilson v. Olson*, No. 2:18-cv-79 (W.D. Mich.).

seek leave to appeal the Michigan Court of Appeals decision.  Instead, he timely filed his petition in this Court.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Failure to grant a mistrial after improper expert testimony

Petitioner's jury heard expert testimony from attorney Joseph Spiegel. Petitioner reports that, before his criminal trial, Mr. Spiegel had been involved in a civil action against Petitioner based on the same scheme underlying Petitioner's criminal prosecution. (Pet'r's Br., ECF No. 1, PageID.26.) Mr. Spiegel's role in the civil action, however, involved review of

5

documents that were not part of the record in the criminal case.  At the beginning of Mr. Spiegel's

testimony, the prosecutor reviewed with Spiegel a listing of materials that he had reviewed.  (Trial

Tr. V, ECF No. 6-12, PageID.1143-1146.)  That list was memorialized in an exhibit that was

admitted into evidence, but not shown to the jury.  (*Id*.)  Mr. Spiegel opined that Petitioner's sale

of securities violated the federal and state statutes regulating securities because the securities

should have been registered as a public offering.  (*Id*., PageID.1148.)  Almost immediately after

Mr. Spiegel offered that opinion, the trial judge stopped the testimony, ostensibly to take a lunch

break.  (*Id*., PageID.1149.)

        The subsequent record, however, revealed that the judge stopped the testimony

because he was concerned about the expert's testimony in two respects: first, the expert's list of

materials reviewed included items that would not be introduced into evidence during the criminal

trial; and second, Mr. Spiegel purported to define the federal and state securities laws and then

opined that Petitioner had violated them.  (*Id*., PageID.1149-1155.)  The court struck the exhibit

that listed the materials that Mr. Spiegel had reviewed—the jury had not yet seen the exhibit.  (*Id*.,

PageID.1152-1153.)

        The parties determined that Mr. Spiegel's statement of the law was not problematic

because they had already identified the instructions on the law and Mr. Spiegel's testimony tracked

that statement of the law.  (*Id*., PageID.1151-1152.) The judge reviewed with Mr. Spiegel the

opinions he had offered with regard to Petitioner's sale of the limited partnership interests to

determine whether the expert was able to offer the opinions he had already offered based solely on

the materials that would be admitted into evidence during the criminal trial.  (*Id*., PageID.1153-

1155, 1159.)  Mr. Spiegel confirmed that he could offer those opinions based on the evidence

admitted during the trial.  (*Id*.)  The court cautioned Mr. Spiegel that he could not offer opinions

based on materials that would not be introduced at trial.  (*Id*.)  The court also cautioned Mr. Spiegel

to avoid comment regarding violation of the federal laws, because federal law violations were not

relevant to the jury's task in the state criminal trial and to not render opinions as to whether

Petitioner had violated state laws, because that determination was reserved for the jury.   (*Id*.,

PageID.1155.)

　　　　Petitioner's counsel moved for a mistrial.  (*Id*., PageID.1156-1158.)  The court

denied that relief concluding that because Mr. Spiegel could offer his opinions regarding

Petitioner's sale of the limited partnership interests based on evidence that had been, or would be,

admitted at trial, any problem with the prior testimony could be corrected with a curative

instruction. (*Id*., PageID.11059-1160, 1169-1169.)  When the jury returned, the court offered the

following instruction:

> I appreciate your patience, ladies and gentlemen.  I told you early on there might
> be interruptions.  Things have gone relatively smoothly but we had to take some
> time to talk about some things, but I want to begin by giving you some instructions
> at this point.  And the first is that you're the judges of the facts in this case, but
> you're to take the law as I give it to you.  So, you've heard some discussion about
> various items of law, but the law you're to consider in applying to the facts as you
> find them to be will be the law that I give you, that I instruct you on at the end of
> the case or that I may take judicial notice of during the course of the case.
>
> And we have one exhibit that has been admitted, 25, and I'll – we'll take judicial
> notice that -- and tell you that that is the -- the law, and I'll include that in my final
> instructions.
>
> Exhibit 22 that you heard some testimony about was about items that this witness,
> Mr. Spiegel, has reviewed prior to giving testimony.  Exhibit 22 is withdrawn and
> I'll ask you to disregard the testimony about the items that Mr. Spiegel reviewed
> prior to coming to court.  Witnesses' opinions, including opinions of expert
> witnesses, are to be based on only evidence that is produced at trial or will be
> produced at the trial.  And we've heard testimony from this witness that limited
> partnership sales were made by the Defendant and that limited partnerships 1
> through 17 were securities that would be required to be registered as public
> offerings rather than offered as private placements.  And I've asked the witness this
> and I'll ask him again now.

Mr. Spiegel, are you able to base your opinions that you're going to give us here in court based only on the evidence that is -- has been adduced at trial and the evi -- and the exhibits introduced trial?

THE WITNESS:       Yes, I can.

THE COURT:       And the opinions that you've given so far that I just mentioned, are those opinions based – can they be based only on the exhibits that have been introduced at trial?

THE WITNESS:       Yes, they can.

THE COURT:       The witness also testified further that, in his opinion, that Defendant had violated state and federal securities laws.  Whether there's been – whether there's been a violation of federal security laws is totally irrel -- irrelevant to this case, it has nothing to do with this.  This is not a federal case.  And in any event, it's your – you're the judges of the facts in this case and it's your decision and your decision alone that is important.  And so I'll instruct you to disregard the opinion of this witness or any other witness as to whether or not the Defendant has violated the law, and it's up to you to make the determination as to whether there's been any violation of law.

Now, you may hear some testimony, or may have already, about interplay between federal and state laws as to certain aspects of securities.  If there are any issues about whether you should hear that testimony, I will be prepared to deal with them.

Anything else for the jury by way of instruction, Mr. Donker?

MR. DONKER:       Nothing additional, your Honor.

THE COURT:       Mr. Kolodziejski?

MR. KOLODZIEJSKI: No, your Honor.

THE COURT:       Okay, thank you.

(*Id*., PageID.1170-1173.)

The Michigan Court of Appeals affirmed the trial court's conclusion that a curative

instruction sufficed to remedy any error inherent in Mr. Siegel's initial testimony:

Defendant argues that a mistrial should have been granted because (1) the prosecutor's expert witness offered his own opinions of the applicable law, and (2) the expert relied on facts not in evidence in support of his opinions.  The parties agree that, in Michigan, an expert witness's testimony must be based on facts in evidence.  MRE 703; *Teal v Prasad*, 283 Mich App 384, 394-395; 772 NW2d 57 (2009).  The parties also agree that the expert initially relied, in part, on facts not in

8

evidence in support of his opinion concerning defendant's actions.  The question is whether the trial court abused its discretion in determining that a curative instruction, rather than a mistrial, was a proper remedy.

A mistrial is an extraordinary remedy that should be granted only when an error is so egregious that its prejudicial effect cannot be remedied in any other way.  *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988).  This is not such a case.  After it became apparent that the testimony of the expert was based on certain items that lacked evidentiary support, the trial court repeatedly asked the expert if his opinion would be the same based on the facts actually presented at trial, and the expert agreed that it would be.  The trial court also explored which matters of evidence the expert would use to support his opinion, and the expert provided that information.  The trial court then provided cautionary instructions to both the expert and the jury concerning the proper basis for the expert's testimony.  Additionally, the court cautioned the expert about the difference between the ultimate question of defendant's guilt or innocence of the criminal charges and stating that defendant had misrepresented the securities to investors or had breached his standard of care as a fiduciary.  The trial court also instructed the jurors that they would make the ultimate decision concerning defendant's guilt or innocence.  "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).  Under the circumstances, defendant has not shown that the trial court abused its discretion by denying the motion for a mistrial and instead curing the initial problems with the expert's testimony through additional questioning and appropriate jury instructions.

(Mich. Ct. App. Op., ECF No. 6-16, PageID.1457-1458.)

In *Renico v. Lett*, 559 U.S. 766 (2010), the Supreme Court outlined the appropriate

analysis to resolve a challenge to the state court's grant or denial of a mistrial in the habeas context:

The "clearly established Federal law" in this area is largely undisputed.  In *Perez*, we held that when a judge discharges a jury on the grounds that the jury cannot reach a verdict, the Double Jeopardy Clause does not bar a new trial for the defendant before a new jury.  9 Wheat., at 579-80.  We explained that trial judges may declare a mistrial "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity" for doing so.  *Id*., at 580.  The decision to declare a mistrial is left to the "sound discretion" of the judge, but "the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Ibid.*

Since *Perez*, we have clarified that the "manifest necessity" standard "cannot be interpreted literally," and that a mistrial is appropriate when there is a "'high degree'" of necessity.  *Washington, supra*, at 506.  The decision whether to grant a mistrial is reserved to the "broad discretion" of the trial judge, a point that "has been consistently reiterated in decisions of this Court." *Illinois v. Somerville*, 410 U.S. 458, 462.  *See also Gori v. United States*, 367 U.S. 364, 368 (1961).

\*    \*    \*

> The legal standard applied by the Michigan Supreme Court in this case was whether there was an abuse of the "broad discretion" reserved to the trial judge. *Somerville, supra*, at 462; *Washington, supra*, at 509. This type of general standard triggers another consideration under AEDPA. When assessing whether a state court's application of federal law is unreasonable, "the range of reasonable judgment can depend in part on the nature of the relevant rule" that the state court must apply. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that "[t]he more general the rule" at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—"the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Ibid.; see also Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009).

*Renico*, 559 U.S. at 773-775.

Petitioner contends that Mr. Spiegel's testimony rendered his trial fundamentally unfair. The record does not bear that out. The three possible concerns regarding Spiegel's testimony are that he testified regarding the law, he relied on materials not admitted into evidence, and he testified regarding the ultimate issue of whether Petitioner violated the state securities laws. The trial court determined, however, that Spiegel's testimony regarding the content of the law was the law as set out in Exhibit 25. The parties and the court concluded that the exhibit was consistent with the instructions that would be given and the exhibit was permitted to remain in evidence without objection from Petitioner's counsel. (Trial Tr. V, ECF No. 6-12, PageID.1151-1152.) Petitioner does not claim that there was any error with regard to the statement of the law. Moreover, even though the statement of the law at issue was exactly the same as the court's intended statement of the law, the trial court clearly instructed the jurors they were to follow the law provided by the court, not anyone else, when deliberating. Jurors are presumed to follow their instructions. *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Petitioner has also failed to identify how he was prejudiced by Mr. Spiegel's initial list of materials reviewed. The court repeatedly ensured that Mr. Spiegel's opinion could be based

on those materials that had been, or would be, admitted into evidence. Moreover, the court made sure the jurors were aware that Mr. Spiegel's opinion was founded upon the same materials they would have available to them.

Finally, Petitioner overstates the constitutional impropriety of Mr. Spiegel's testimony on ultimate issues reserved to the jury. Petitioner has not cited—and cannot cite—any Supreme Court cases declaring that the introduction of such testimony renders a trial fundamentally unfair. Interpreting the Federal Rules of Evidence, the Supreme Court in *United States v. Johnson*, 319 U.S. 503 (1943), considered the admissibility of expert testimony that was challenged because it "invaded the jury's province." *Id*. at 519. The court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury. The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury. The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence. The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more than that they were bound by the calculations made by the defense's expert based on the defendants' assumptions of the case. So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's, we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules.

*Johnson*, 319 U.S. at 519-20. Federal Rule of Evidence 704 (a) expressly states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." *Id*. The parallel Michigan Rule of Evidence is virtually identical. Mich. R. Evid. 704. Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that opined witnesses could not express opinions on ultimate issues. Advisory Committee Notes, Fed. R. Evid. 704. In *United States v. Scheffer*,

523 U.S. 303 (1998), in a concurring opinion, Justice Kennedy quoted the Advisory Committee

Notes to explain the change:

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.  7 Wigmore §§ 1920, 1921; McCormick § 12.  The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric." 7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319.

In Petitioner's case, the court was very careful to ensure that the jury understood its

role in weighing the evidence presented to it—that it was the jury's job to determine whether

Petitioner had violated the securities laws—not Mr. Spiegel's.  As noted above, jurors are

presumed to follow their instructions. *See, Weeks*, 528 U.S. at 234).

On this record, the trial court's conclusion that instructions would suffice to cure

any prejudice and the appellate court's affirmance of that decision appear to be well-grounded.

Therefore, given the deferential AEDPA standard and the broad discretion afforded the trial court

in resolving mistrial motions, Petitioner has failed to show that state appellate court's rejection of

his claim is contrary to, or an unreasonable application of, clearly established federal law.  He is

not entitled to habeas relief on this claim.

## IV.    Extradition and due process

Petitioner also complains that his due process rights were violated because his

extradition from Germany was premised on charges that were altered after he was returned to the

United States.  That alteration, Petitioner contends, violated the terms of the treaty pursuant to

which he was extradited.

12

The Michigan Court of Appeals resolved Petitioner's claim as follows:

Defendant was extradited from Germany to stand trial in this case.  He argues that under the extradition treaty between the United States and Germany, the prosecutor was prohibited from changing, adding to, or amending the criminal charges used to justify the extradition, and that the prosecutor violated this "principle of specialty" by amending the complaint to allege new offenses, thereby depriving the trial court of personal jurisdiction over him with respect to any unextradited or amended charges.  We disagree.

The principle of specialty 'requires that the requesting country not prosecute for crimes . . . for which an extradition was not granted.'" *United States v Garrido-Santana*, 360 F3d 565, 577 (CA 6, 2004), quoting *Demjanjuk v Petrovsky*, 776 F2d 571, 583 (CA 6, 1985), vacated on other grounds, 10 F3d 338 (CA 6, 1993).  The Sixth Circuit has recognized that the rule of specialty bars the prosecution of an individual for unextradited crimes.   *Garrido-Santana*,  360  F3d  at  578. Incorporating this principle of specialty, article 22(1) of the extradition treaty with Germany provides in pertinent part:

> A person who has been extradited under this Treaty shall not be proceeded against, sentenced or detained with a view to carrying out a sentence or detention order for any offense committed prior to his surrender other than that for which he was extradited, nor shall he be for any other reason restricted in his personal freedom, . . . [Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, signed June 20, 1978, art 22, cl 1 (emphasis added).]

The term "offense" is not specifically defined in the treaty.  However, plaintiff correctly observes that the complaint and amended complaint contain the same offenses, with the same possible penalties.  There are only two differences between the original and amended complaints.  First, in count two of the amended complaint, concerning the larceny by conversion charge, the language was changed from the conversion of property "which belonged to Robert Wachoski and other investors in the Diversified Group" to the conversion of property "which belonged to the investors in the Diversified Group[.]"  The removal of one specific complainant does not change the nature of the offense.  Both complaints alleged that defendant converted money from investors in the Diversified Group; Wachoski was one member of the group.  Neither the elements of the offense nor the possible punishment were changed by the amendment.

The second change involved one of the securities act violations, specifically that defendant illegally offered or sold unregistered securities, contrary to MCL 451.2508.  The language was changed from "offering or selling a non-registered security to Robert Wachoski" to "offering or selling a non-registered security to Pamela Buehl[.]"  The proofs for this charge remained essentially the same, despite that Wachoski may have purchased an interest in a different Diversified partnership, or invested a different amount, than Buehl.  The crime charged is the

offering of the unregistered security.  Defendant has not shown that he was charged with a different offense so as to trigger the rule of specialty.  Moreover, because no formal charging document is necessary to support a request for extradition under the treaty, see *Kaiser v Rutherford*, 827 F Supp 832, 834 (DDC, 1993), and the amendment of the complaint only fixed a technical defect in the initial complaint, we conclude that the amendment did not amount to a change in the charge or offense so as to prevent a trial on the offense.  See *In re Rowe*, 77 F 161, 167 (CA 8, 1896).

(Mich. Ct. App. Op., ECF No. 6-16, PageID.1460-1461.)

The question to be resolved on habeas review is whether the court of appeals' determination of this issue is contrary to, or an unreasonable application of, clearly established federal law.  As explained above, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller*, 742 F.3d at 644 (citing *Greene*, 565 U.S. at 38).  This Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller*, 299 F.3d at 578-79.  That limitation greatly simplifies the analysis.

The crux of Petitioner's argument is that the "offense" for which he was extradited was not the offense for which he was tried.  He sees the differences between the initial and amended complaint—the same differences identified by the court of appeals in its opinion—as sufficiently significant to preclude the trial court's exercise of jurisdiction over him.  Respondent disagrees.  Respondent notes that the statutes Petitioner was accused of violating remained the same in both complaints, as did the punishments; and, that Petitioner was tried for selling the very same limited partnership interests that were at issue when the matter was presented for extradition.

Petitioner cites only one Supreme Court case in support of his argument: *United States v. Rauscher*, 119 U.S. 407 (1886).  In *Rauscher*, the Supreme Court considered whether Rauscher, who had been extradited from Great Britain for murder, could be tried instead for cruel and unusual punishment.  The Court concluded he could not, even if the evidence were exactly the

14

same in the prosecution for cruel and unusual punishment in the United States as it had been in the

extradition proceedings for murder in Great Britain. *Rauscher*, 119 U.S. at 431-432. But, there is

a critical distinction between Rauscher's situation and Petitioner's: the changed offense of cruel

and unusual punishment in Rauscher's case was not an extraditable offense:

> [B]ut, as the treaty only justified his delivery on the ground that he was proved to
> be guilty of murder before the committing magistrate, it does not follow at all that
> such magistrate would have delivered him on a charge, founded upon precisely the
> same evidence, of inflicting cruel and unusual punishment; an offense for which
> the treaty made no provision, and which was of a very unimportant character when
> compared with that of murder.

*Id*. at 432. The Supreme Court found that difference between a prosecution for murder and a

prosecution for cruel and unusual punishment to be critical:

> The treaty of 1842 being, therefore, the supreme law of the land, of which the courts
> are bound to take judicial notice, and to enforce in any appropriate proceeding the
> rights of persons growing out of that treaty, we proceed to inquire, in the first place,
> so far as pertinent to the questions certified by the circuit judges, into the true
> construction of the treaty. We have already seen that, according to the doctrine of
> publicists and writers on international law, the country receiving the offender
> against its laws from another country had no right to proceed against him for any
> other offense than that for which he had been delivered up. This is a principle
> which commends itself, as an appropriate adjunct, to the discretionary exercise of
> the power of rendition, because it can hardly be supposed that a government which
> was under no treaty obligation, nor any absolute obligation of public duty, to seize
> a person who had found an asylum within its bosom, and turn him over to another
> country for trial, would be willing to do this, unless a case was made of some
> specific offense, of a character which justified the government in depriving the
> party of his asylum. It is unreasonable that the country of the asylum should be
> expected to deliver up such person to be dealt with by the demanding government
> without any limitation, implied or otherwise, upon its prosecution of the party. In
> exercising its discretion, it might be very willing to deliver up offenders against
> such laws as were essential to the protection of life, liberty, and person, while it
> would not be willing to do this on account of minor misdemeanors, or of a certain
> class of political offenses in which it would have no interest or sympathy.
> Accordingly, it has been the policy of all governments to grant an asylum to persons
> who have fled from their homes on account of political disturbances, and who might
> be there amenable to laws framed with regard to such subjects, and to the personal
> allegiance of the party. In many of the treaties of extradition between the civilized
> nations of the world there is an express exclusion of the right to demand the
> extradition of offenders against such laws, and in none of them is this class of
> offenses mentioned as being the foundation of extradition proceedings. **Indeed, the**

**enumeration of offenses in most of these treaties, and especially in the treaty now under consideration, is so specific, and marked by such a clear line in regard to the magnitude and importance of those offenses, that it is impossible to give any other interpretation to it than that of the exclusion of the right of extradition for any others.**

*Id*. at 419-420.

Petitioner does not contend that the offenses described in the amended complaint are not subject to extradition under the treaty. Therefore, the law clearly established in *Rauscher* is not contravened by the Michigan Court of Appeals' determination that the Bay County Circuit Court properly exercised jurisdiction over Petitioner in the prosecution of the amended complaint.[2] Accordingly, Petitioner is not entitled to habeas relief on his "rule of specialty" claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

---

[2] The fact that the state appellate court's determination is not contrary to, or an unreasonable application of, clearly established federal law does not mean that Petitioner does not have a valid argument for extension of the *Rauscher* holding to other circumstances—circumstances that might include the complaint amendments here. Indeed, Petitioner presents such an argument supported by additional lower federal court authority. That argument is not appropriate on habeas review:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. *See* Scheidegger, *Habeas Corpus, Relitigation, and the Legislative P*ower, 98 Colum. L. Rev. 888, 949 (1998). Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." *Yarborough*, 541 U.S., at 666. AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law." *Ibid*.

*White*, 572 U.S. at 426.

warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have

examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's

claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's denial of

Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny

Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is

in custody in violation of the constitution and has failed to make a substantial showing of a denial

of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would

be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the

Court not certify that an appeal would not be taken in good faith.

Dated:    July 6, 2020                                          /s/ *Maarten Vermaat*

                                                                              Maarten Vermaat
                                                                              United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).